IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


Civil Action No. 11-1812


**IMANUEL BASSIL ALI**,
Petitioner

v.

**JOHN E. WETZEL, *et al.*,**
Respondents

## BRIEF FOR THE OFFICE OF ATTORNEY GENERAL


Brief Pursuant to the District Court's Order of October 17, 2019, Referring this Matter to the Office of Attorney General for Comment on the Joint Motion for Partial Grant of the Writ of Habeas Corpus.

JOSH SHAPIRO
Attorney General
Commonwealth of Pennsylvania
MICHELLE A. HENRY
First Deputy Attorney General
JENNIFER C. SELBER
Executive Deputy Attorney General
  Criminal Law Division
RONALD EISENBERG
Chief Deputy Attorney General
  Special Litigation Section

Office of Attorney General
1600 Arch Street
Philadelphia, PA 19103
reisenberg@attorneygeneral.gov
(267) 940-6676
November 15, 2019

# TABLE OF CONTENTS

Table of Citations                                                                        ii

Statement of the Case                                                                      1

Argument

    AEDPA precludes habeas relief on claim 15.                          4

    A.   The clearly established law of the United States Supreme Court does
          not prohibit penalty-phase comment on a defendant's lack of remorse.   5

    B.   In any event, the prosecutor's references to remorse did not constitute
          comment on the petitioner's silence at trial.                        12

Conclusion                                                                                19

# TABLE OF CITATIONS

**cases:**

*Alberni v. McDaniel*, 458 F.3d 860 (9th Cir. 2006)     7

*Bonner v. Ercole*, 338 Fed. Appx. 61 (2nd Cir. 2009)     7

*Carter v. Kentucky*, 450 U.S. 288 (1981)     8

*Coble v. Quarterman*, 496 F.3d 430 (5th Cir. 2007)     14

*Commonwealth v. Fletcher*, 861 A.2d 898 (Pa. 2004)     11

*Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003)     10, 11

*Commonwealth v. Gamboa-Taylor*, 2019 WL 5783911 (Pa. 2019)     12

*Commonwealth v. Lee*, 2019 WL 4131429 (Pa. Super. 2019)     11

*Commonwealth v. Lester*, 722 A.2d 997 (Pa. 1998)     2, 13, 16

*Commonwealth v. Reid*, 2019 WL 476717 (Pa. Super. 2019)     11

*Edwards v. Roper*, 688 F.3d 449 (8th Cir. 2012)     16

*Estelle v. Smith*, 451 U.S. 454 (1981)     5, 8, 9, 10

*Griffin v. California*, 380 U.S. 609 (1965)     5

*Harrington v. Richter*, 562 U.S. 86 (2011)     4

*Howard v. Horn*, 56 F. Supp. 3d 709 (E.D. Pa. 2014)     18

*Lesko v. Lehman*, 925 F.2d 1527 (3rd Cir. 1991)     10

*Mitchell v. United States*, 526 U.S. 314 (1999)     *passim*

*People v. Boyette*, 58 P.3d 391 (Ca. 2002)     17

*Vick v. Williams*, 233 F.3d 213 (4th Cir. 2000)          7

*White v. Woodall*, 572 U.S, 415 (2014)          *passim*

**other authority:**

28 U.S.C. § 2254          3, 4, 8, 10, 12

United States Sentencing Guidelines § 3E1.1          6, 7, 8

42 Pa. C.S. § 9711          16

## STATEMENT OF THE CASE

The petitioner was sentenced to death in 1991 for the brutal murder of a mother in front of her three small children. The jury found as aggravating circumstances that the petitioner physically tortured the woman and created a grave risk of death to her four-year-old daughter by attacking the child after she witnessed her mother dying. The parties have now filed a joint motion to vacate the death penalty based on the fifteenth claim for relief in the petitioner's habeas corpus petition. This Court issued an order referring the matter to the Pennsylvania Office of Attorney General for comment by way of an *amicus* brief. This brief is filed pursuant to that order.

After imposition of the judgment of sentence, petitioner filed a direct appeal to the Pennsylvania Supreme Court. He contended there, among other claims, that trial counsel provided ineffective assistance by failing to object to remarks – during the Commonwealth's closing argument at the penalty hearing – about the petitioner's remorselessness. Petitioner claimed that any reference to remorse constituted an improper comment on his exercise of his right not to testify at the guilt or penalty phases.

The Pennsylvania Supreme Court rejected the claim on the merits. The court initially block-quoted language from an earlier opinion suggesting that the privilege against self-incrimination had no direct application at the sentencing phase of a

capital case, after the defendant has already been found guilty. The court then held, however, that relief was not warranted in this case because the comments here were brief and within the realm of permissible oratorical flair. *Commonwealth v. Lester*, 722 A.2d 997, 1009 (Pa. 1998). Petitioner later filed a series of state post-conviction petitions raising other claims that are without relevance to the joint motion currently at issue.

In 2011, petitioner filed a federal habeas corpus petition, and in 2015 he filed a memorandum of law in support of the petition. His 174-page memorandum contained 27 main argument headings. The fifteenth heading, beginning on page 141 of the memorandum, addressed the penalty phase remorse issue. The memorandum challenged not only the Commonwealth's closing argument remarks, but also its questioning of petitioner's son, who took the stand at the penalty phase, asserted his father's innocence of the charges, and was asked whether petitioner had expressed any remorse while discussing the case with him.[1]

The Commonwealth filed a lengthy response to petitioner's memorandum, arguing that the state court's adjudication of the penalty phase remorse issue was not an unreasonable application of clearly established federal law because there is no clearly established federal law that applies the self-incrimination privilege to

---

[1] The state court opinion on direct appeal addressed only the closing argument, not the questioning of the son. On the publicly available record, it is unclear whether petitioner raised both issues at the time.

consideration of remorse at sentencing. As a result, argued the Commonwealth, relief was barred by 28 U.S.C. § 2254(d). Habeas Response at 124-27. Petitioner filed a reply memorandum in December 2017.

Then in September 2019, petitioner and the Philadelphia District Attorney's Office filed a joint motion requesting this Court to single out the remorse issue – the 15th of petitioner's 27 habeas claims, which was the fourth of his seven penalty phase claims – for special consideration. The motion suggests that the claim has clear merit and therefore warrants summary disposition. Accordingly, the motion asks the Court to grant immediate penalty phase relief, while continuing to adjudicate the remaining claims for guilt phase relief in the normal course.

On October 17, 2019, this Court issued its order referring the matter to the Pennsylvania Office of Attorney General. On October 22, 2019, the Court issued a further order directing the Clerk of Court to serve a copy of the previous order on that Office.

# ARGUMENT

## AEDPA Precludes Habeas Relief on Claim 15.

Under the habeas corpus statute, 28 U.S.C. § 2254(d), a federal court generally may not grant relief to a state prisoner on a claim that has been adjudicated on the merits in state court. The statute provides an exception if the adjudication was contrary to or an unreasonable application of clearly established federal law. *See, e.g., Harrington v. Richter*, 562 U.S. 86, 102 (2011) (discussing "modified *res judicata* rule").

The joint motion avers that claim 15 qualifies for this exception. The motion avers that a prosecutor illegally comments on silence, in violation of clearly established law addressing the Fifth Amendment privilege against self-incrimination, if he refers during a sentencing proceeding to a defendant's failure to express remorse. The motion further avers that the comments about remorse in this case were in fact references to the petitioner's exercise of his right not to testify at the penalty phase of his capital murder trial.

The joint motion's discussion of the relevant law is incomplete. The motion's discussion of the relevant facts is also incomplete.

*A.*     *The clearly established law of the United States Supreme Court does not prohibit penalty-phase comment on a defendant's lack of remorse.*

The joint motion relies on two longstanding precedents of the United States Supreme Court, one over 50 years old, one almost 40 years old, for the proposition that the Court has clearly barred comments on lack of remorse at sentencing. The motion, however, fails to mention two much more recent and specific precedents that negate the parties' claim.

The joint motion cites *Griffin v. California*, 380 U.S. 609 (1965), and *Estelle v. Smith*, 451 U.S. 454 (1981). *Griffin* held that the government may not urge the jury to draw an adverse inference of guilt based on the defendant's failure to take the stand and defend himself at trial. *Estelle* held that a defendant's pre-trial statements to a court psychiatrist could not be used against him in a capital sentencing proceeding where the defendant was not first warned of his Fifth Amendment right to remain silent. *Griffin* did not address sentencing proceedings, or comments on lack of remorse. *Estelle* involved a sentencing proceeding, but not comments on lack of remorse.

Since *Griffin* and *Estelle*, however, the Supreme Court has explicitly acknowledged that remorse presents a distinct issue that is not resolved by the Court's prior precedent. In *Mitchell v. United States*, 526 U.S. 314 (1999), the Court considered whether a defendant's silence during sentencing could properly give rise to an adverse inference about the quantity of drugs she had delivered. The Court

held that such an inference would violate the defendant's right not to speak. At the start of its discussion, however, the Court carefully limited the question to the use of silence "in determining facts about the crime." *Id.* at 316-17. And in concluding its analysis, the Court similarly limited its holding to the use of silence "with regard to factual determinations respecting the circumstances and details of the crime." *Id.* at 328.

Crucially, after announcing this holding the Court expressly cautioned that determinations about the facts of the crime do *not* include inferences about lack of remorse. "Whether silence bears upon the determination of a lack of remorse," warned the Court, "or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines (1998), is a separate question. *It is not before us, and we express no view on it*." *Id.* at 330 (emphasis supplied).

This case, therefore, is not like the usual AEDPA inquiry, in which the federal habeas court must parse through precedent in search of what may or may not be there: a holding of the United States Supreme Court that establishes federal law on the relevant legal issue. In this case, the Supreme Court has already done that work, by expressly announcing that remorse remains an open question. A state court adjudication cannot constitute a contrary or unreasonable application of clearly established law if the Supreme Court has openly declared that no such law exists.

*See, e.g., Alberni v. McDaniel*, 458 F.3d 860, 864 (9th Cir. 2006) (habeas deference precludes relief "when the Supreme Court has expressly reserved consideration of an issue, as it has here"); *Bonner v. Ercole*, 338 Fed. Appx. 61, 62 (2nd Cir. 2009) (same); *Vick v. Williams*, 233 F.3d 213, 218 (4th Cir. 2000) (same).

While the joint motion does not mention *Mitchell*, the parties are certainly aware of it. Petitioner discussed the case in his 2015 memorandum of law, at 143-44. The memorandum, however, did not acknowledge *Mitchell*'s most important passage: the part where the Court expressly reserved the remorse/self-incrimination question. It was left to the Commonwealth, in its habeas response at 125-26, to bring that dispositive language to the Court's attention. Petitioner finally addressed the *Mitchell* reservation in his reply memorandum. His attempt to distinguish it, however, was unsuccessful, and the effort has been abandoned for purposes of the joint motion now before the Court.[2]

---

[2] As noted above, *Mitchell* states that "[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines (1998), is a separate question." 526 U.S. at 330. Petitioner suggested in his reply that the phrase "lack of remorse" is modified by the phrase "for purposes of the downward adjustment …." The Supreme Court, insisted petitioner, wasn't talking about remorse in general; it only meant remorse as a basis for a downward departure under § 3E1.1 of the sentencing guidelines. Reply memorandum at 101-02.

The argument is both grammatically and legally specious. Petitioner's rendering of the key *Mitchell* sentence ignores its actual structure and punctuation and would require redacting it, such as by removing the comma after the word "remorse" and inserting a comma after the word "responsibility." But litigants are not free to rewrite Supreme Court precedent in that manner.

*footnote continued …*

Mitchell is not the only pertinent precedent that is unaddressed in the joint motion. In *White v. Woodall*, 572 U.S. 415 (2014), the Supreme Court recently revisited the right to remain silent in the sentencing context. *Woodall* is especially important here because, like this case, it arose on federal habeas review. The issue in *Woodall* was whether the state court was required by the constitution to give a no-adverse-instruction at the penalty phase of a capital trial. The Court had previously held that such an instruction is mandated at the guilt phase. *See Carter v. Kentucky*, 450 U.S. 288 (1981). The Sixth Circuit, "reading *Carter*, *Estelle*, and *Mitchell* together," ruled that the Fifth Amendment required an instruction at the penalty stage as well. *Woodall*, 572 U.S. at 420.

The Supreme Court reversed. The Court held that, for purposes of § 2254(d), there is no such thing as "reading together" or "extending" prior cases that do not directly control. The relevant principle must be clearly established by existing Supreme Court precedent, and neither *Carter*, *Estelle*, nor *Mitchell* qualified. The Court noted that "[w]e have never directly held that *Carter* applies at a sentencing phase" as opposed to the guilt phase. *Id.* at 421. The Court acknowledged broad

---

In any event, petitioner's reading would make no sense as a matter of law. For purposes of the sentencing guidelines, "remorse" does not equate with "acceptance of responsibility." Section 3E1.1 provides that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Application Note 2. Given that § 3E1.1 excludes remorse (as opposed to acceptance of responsibility) as a basis for a downward departure, it appears unlikely that the Supreme Court intended to confine its reservation of the remorse issue to what amounts to a null set.

language in *Estelle* applying the privilege against self-incrimination to the penalty phase. But the Court characterized this language as "dictum," observing that "it is not uncommon for a constitutional rule to apply somewhat differently at the penalty phase than it does at the guilt phase." *Id.* at 421, 424 n.4.

The Court then turned to *Mitchell*. The Court reiterated that *Mitchell*'s holding "was limited to inferences pertaining to the facts of the crime," and that *Mitchell* therefore did not bar all inferences that "might … be drawn from a defendant's penalty-phase silence." In particular, "*Mitchell* included an express reservation" on the issue of remorse. *Id.* at 421.

For the *Woodall* Court, that express reservation was critical. The Court recognized that a no-adverse-inference instruction would prohibit the jury from inferring lack of remorse from a defendant's silence at the penalty phase. But that is exactly the kind of inference "as to which *Mitchell* leaves the door open," *id.* at 423-24. And if, as *Mitchell* established, a lack-of-remorse inference is not barred by clearly established law, then an instruction that would bar such an inference must not be clearly established law either. *Woodall*, therefore, relies on and extends *Mitchell*. Just as *Mitchell*'s express reservation precludes habeas relief regarding lack-of-remorse remarks, it also precludes habeas relief regarding a no-adverse-inference instruction.

While the joint motion does not mention *Woodall*, it does lean heavily on *Lesko v. Lehman*, 925 F.2d 1527 (3rd Cir. 1991), a 28-year-old Third Circuit decision that overturned a capital sentence based on prosecutorial comments on lack of remorse. *Lesko*, however, was pre-AEDPA, pre-*Mitchell* and pre-*Woodall*; for purposes of habeas review regarding remorse claims, it is effectively a dead letter. Circuit court decisions, moreover, no matter how recent, are not relevant in determining the clearly established law to be applied in gauging the reasonableness of state court adjudications. The Supreme Court has made clear that "a lower court may not consult its own precedents, rather than those of this Court, in assessing a habeas claim governed by § 2254." *Woodall*, 572 U.S. at 420 n.2. The parties' reliance on *Lesko*, while ignoring *Mitchell* and *Woodall*, is not consistent with the law.

The joint motion also errs in relying on a decision of the Pennsylvania Supreme Court, *Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003). In *Freeman*, the state court recognized that the privilege against self-incrimination does generally apply at the sentencing stage, citing *Estelle v. Smith*, *supra*. *Id.* at 410. The parties aver that the *Freeman* decision amounts to an admission by the state court that its earlier ruling in this case was contrary to clearly established federal law.

But *Freeman* was not a case addressing remorse. The Pennsylvania Supreme Court revisited the remorse/right-to-silence issue shortly after *Freeman*, in

*Commonwealth v. Fletcher*, 861 A.2d 898 (Pa. 2004). Distinguishing *Freeman*, the court held that the prosecutor's remarks about lack of remorse did not inappropriately implicate the defendant's constitutional right to remain silent. *Id.* at 917-18. Thus the Pennsylvania Supreme Court has not abrogated its prior precedent on references to lack of remorse at sentencing. The joint motion fails to mention *Fletcher*.

In any case, decisions of a state supreme court, like decisions of a federal appeals court, do not define the body of clearly established federal law to be applied in gauging the reasonableness of a state court adjudication. The relevant decisions for that purpose are the rulings in *Mitchell*, which expressly reserved the remorse question, 526 U.S. at 330, and in *Woodall*, which recognized that the Fifth Amendment privilege applies differently at the penalty phase than it does at the guilt phase, 572 U.S. at 421, 424 n.4. In light of *Mitchell* and *Woodall*, the state court adjudication of petitioner's remorse claim did not violate clearly established law.

AEDPA therefore precludes mid-litigation summary relief on claim 15.[3]

---

[3] In his habeas reply memorandum, at 14, petitioner argued that § 2254(d) is wholly inapplicable to this case, because former Pennsylvania Supreme Court Justice Ronald D. Castille, in his previous position as District Attorney of Philadelphia, allegedly authorized the Commonwealth to seek a capital sentence at petitioner's trial. The reply memorandum noted, at 18-19, that numerous other defendants challenged their judgments of sentence on this ground.

In fact these other defendants were granted *nunc pro tunc* appeals by a common pleas court judge, although at least two of those grants have subsequently been reversed. *See Commonwealth v. Reid*, 2019 WL 476717 (Pa. Super. 2019); *Commonwealth v. Lee*, 2019 WL 4131429 (Pa. Super.

B.	*In any event, the prosecutor's references to remorse did not constitute comment on the petitioner's silence at trial.*

Even assuming (contrary to *Mitchell* and *Woodall*) that clearly established law provided a legal basis for petitioner's remorse claim, the factual record would still bar relief. The prosecutor's comments on remorse referred not to petitioner's right to remain silent, but to the testimony presented at trial by the Commonwealth and by the defense itself. The joint motion provides brief quotations, but fails to discuss the actual context of the remarks.

There were three references to remorse during the penalty phase. The first occurred during the testimony of petitioner's son, who was called by the defense. On direct examination by defense counsel, the son testified that he knew his father was innocent, and that the trial was unfair. Notes of Testimony (N.T.) 11/13/91, 76-77. On cross-examination, the prosecutor initially asked the witness about his interactions with petitioner over a very specific period of time: April 6-19, 1990. *Id.*

---

2019); *see also Commonwealth v. Gamboa-Taylor*, 2019 WL 5783911 (Pa. 2019) (opinion in support of affirmance) (common pleas court has no power to order higher court to rehear appeal).

Unlike those defendants, however, it appears that petitioner himself never sought to vacate the state supreme court's adjudications on this ground. Unless and until those adjudications are vacated, a federal habeas court remains subject to the plain language of § 2254(d)(1): the writ shall not be granted with respect to any claim adjudicated on the merits in state court, unless the adjudication of the claim was contrary to or unreasonably applied clearly established law.

In any case, the parties chose not to make the Castille argument in the joint motion, and so it is not before the Court for present purposes.

at 77-78. April 6th was the date of the murder, and petitioner was arrested on the 19th. *See Commonwealth v. Lester*, 722 A.2d at 1001-02.

In response to the question, petitioner's son described innocent behavior, and then expanded on his testimony. He said that he saw petitioner on a regular basis, that petitioner had no mental health issues, that petitioner was never violent, and that he considered himself privileged to have petitioner as a father. N.T. 11/13/91, 79-80.

In light of the witness's profession of knowledge about petitioner's guilt or innocence, his statements about petitioner's good character, and his testimony of his very close and ongoing relationship with his father, the prosecutor then asked the witness about his interactions with petitioner over the succeeding eighteen months between the crime and the trial. The witness said he had continued to communicate with his father on a regular basis over that time. The prosecutor asked the witness whether petitioner had ever expressed any remorse during those conversations. *Id.* at 80-81.[4]

That one question was the entirety of the prosecution's reference to remorse with petitioner's son. The joint motion fails to explain how this questioning infringed on petitioner's exercise of his right not to testify at trial. The question was

---

[4] "During the time you talked to him during the past year or 18 months, did he ever express one bit of remorse about what he had done?"

explicitly directed at petitioner's out-of-court discussions with his son, not at petitioner's silence in court. As the witness himself testified, petitioner chose not to remain silent with his son, and the Commonwealth had the right to ask about those conversations once the witness took the stand and offered his testimony. The parties present no Fifth Amendment precedent, let alone clearly established law from the United States Supreme Court, that would prohibit such a question.[5]

The second reference to remorse occurred during the prosecutor's penalty phase closing argument, during his discussion of the mitigation evidence offered by the defense. In addition to a psychiatric expert and petitioner's son, five additional members of petitioner's family took the stand: three sisters and two nieces.

The first sister testified that petitioner was a "sensitive" and "intelligent" person, who deserved to live. *Id.* at 24. The second sister testified that petitioner was of sound intelligence, that if he committed the murder he must have been under the influence of drugs, and that he did not deserve the death penalty. *Id.* at 35-36, 40. The third sister testified that petitioner was a normal human being who received love from his family, and she pleaded for his life. *Id.* at 66-67.

The first niece testified that she was very close to petitioner, and that he was never a violent man. *Id.* at 70, 72. The second niece testified that, if he committed

---

[5] Indeed case law is to the contrary. *See, e.g., Coble v. Quarterman*, 496 F.3d 430, 438 (5th Cir. 2007) (prosecutor properly argued that statements defendant made to others shortly after murder contained no indication of remorse).

the murder, petitioner must not have been in his right mind, and that he deserved to live. *Id.* at 74.

The prosecutor addressed this evidence in two paragraphs midway through his closing argument. He began this portion of his summation by making clear his subject: "And you heard testimony at the penalty phase in mitigation." He then posed a series of rhetorical questions, asking several times if the jury had heard any "remorse" mentioned in that mitigation testimony. He then again asked the jury to think about "the testimony that you heard," the testimony from "family members." He then spent several more sentences reviewing what "they," the family members, had said. He referred seven times to "they." *Id.* at 95-96.[6]

That was the entirety of the prosecution's reference to the failure to present evidence of remorse in mitigation. The joint motion fails to explain how this argument infringed on petitioner's exercise of his right not to testify at trial. The

---

[6]    "And **you heard testimony at the penalty phase in mitigation**. What did you hear in mitigation? Did you hear one ounce of remorse? One ounce of remorse? Did you hear one morsel, one iota in excusion [sic] for this behavior? Is there an excuse for this behavior? Is there something that mitigates this behavior? I didn't hear it, did you? If so, say so in your penalty. But did you hear one bit of excuse or mitigation, of remorse or one bit of human element? Not from that witness stand."

   "And think about this, **the testimony that you heard** – and it is regrettable that **family members** must sit on that witness stand and testify in these proceedings – but **did they tell you** about a life that was barren of human kindness? **No, they didn't. Did they tell you** about a life that was bereft of family contact? **No, they didn't. Did they tell you** about a life of a person who had no possibility of assistance or people who were concerned for him? **No, they didn't. They told you** about a person who could and did select his way to go in life…."

prosecutor referred repeatedly and explicitly to "the testimony that you heard," the testimony from "they," the "family members." "They" is not "he,"; "the testimony that you heard" is not "the testimony that you did not hear." The defense itself chose to present this testimony, and the Commonwealth therefore had the right to talk about it in its closing argument. The parties present no Fifth Amendment precedent, let alone clearly established law from the United States Supreme Court, that would prohibit such argument.[7]

The final reference to remorse occurred later in the prosecutor's closing argument, during his discussion of the aggravating circumstance of torture, 42 Pa. C.S. § 9711(d)(8). Evidence introduced at the guilt and penalty phases established that petitioner viciously beat the victim with an iron, stabbed her repeatedly, scalded her with boiling water (causing second- and third-degree burns over 15% of her body), and then held her head under water in the bathtub until she drowned. Next he beat the victim's four-year-old daughter and tried to smother her with a pillow. *See Commonwealth v. Lester*, 722 A.2d at 1001-02. The prosecutor recounted this evidence, describing petitioner as a remorseless torturer. *Id.* at 99-100.[8]

---

[7] Indeed case law is to the contrary. *See, e.g., Edwards v. Roper*, 688 F.3d 449, 460 (8th Cir. 2012) (prosecutor properly argued that mitigation witnesses presented by defense did not testify that defendant expressed remorse).

[8] "That is a torturer. That is a beater of children; remorseless, concernless…. [H]e held a struggling woman under scalding water for seconds while she hollered and he beat her from one room to another and punched her so hard in the stomach that the impact was visible on

That was the entirety of the prosecution's reference to the criminal behavior as without remorse. The joint motion fails to explain how this language infringed on petitioner's exercise of his right not to testify at trial. The argument was self-evidently about what petitioner did in the victim's home in April 1990, not about what he did in court a year and a half later. The prosecutor therefore had the right to advocate based on the proven facts. The parties present no Fifth Amendment precedent, let alone clearly established law from the United States Supreme Court, that would prohibit such argument.[9]

But there is one additional portion of the transcript that bears on petitioner's Fifth Amendment claim. Moments after the prosecutor's summation, the trial court gave its final instructions to the jury. At the end of those instructions, the court cautioned the jury as follows:

> Consider all evidence and arguments of both Commonwealth and defense counsel, including the evidence you heard during the trial. Be fair and do not let yourself be influenced by passion or prejudice. *It was entirely up to the defendant whether to testify or present evidence. You must not draw any adverse inference from his silence.*

---

her internal organs, and … he held her under water for not one minute or two minutes or three minutes, but more than three minutes, four minutes under water. And if one can imagine torture greater than scalding of the face, greater than having your hair pulled out by its roots, greater than having your head gashed and your body scarred and beaten, one can imagine the torture one must know as you look through a film of water at the face of your murderer, knowing that you are going to die…."

[9] Indeed case law is to the contrary. *See, e.g., People v. Boyette*, 58 P.3d 391, 433, 439 (Cal. 2002) (prosecutor properly argued that, based on the coldblooded nature of the shooting, defendant was a "remorseless killer").

*Id.* at 110 (emphasis supplied). *See, e.g., Howard v. Horn*, 56 F. Supp. 3d 709, 732, 736 (E.D. Pa. 2014) (no-adverse-inference instruction mitigates risk that jury will draw improper inference from defendant's failure to testify). The joint motion fails to mention the instruction.

In light of the actual record, the state court reasonably determined that the references to remorse were properly limited, and that trial counsel therefore was not ineffective. And, as *Mitchell* and *Woodall* establish, the state court adjudication would not have contravened clearly established law even had the jury actually been asked to infer lack of remorse from petitioner's silence at sentencing.

Relief is therefore barred by § 2254.

# CONCLUSION

WHEREFORE, the Office of Attorney General respectfully submits this

brief, in accordance with this Court's referral, to assist in the resolution of the Joint

Motion For Partial Grant of the Writ of Habeas Corpus.

Respectfully submitted,

/s/ *Ronald Eisenberg*

JOSH SHAPIRO
Attorney General
Commonwealth of Pennsylvania
MICHELLE A. HENRY
First Deputy Attorney General
Office of Attorney General        JENNIFER C. SELBER
1600 Arch Street                        Executive Deputy Attorney General
Philadelphia, PA 19103              Criminal Law Division
reisenberg@attorneygeneral.gov   RONALD EISENBERG
(267) 940-6676                          Chief Deputy Attorney General
November 15, 2019                     Special Litigation Section

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA


IMANUEL BASSIL ALI          :               CIVIL ACTION

                            :

                            :

       v.                    :

                            :

                            :

JOHN E. WETZEL, *et al.*        :               NO. 11-1812


## CERTIFICATE OF SERVICE

I, RONALD EISENBERG, certify that on November 15, 2019, a copy of this brief was served through the Court's electronic filing system upon:


Paul M. George, Esq.                    Shawn Nolan, Esq.
Philadelphia District Attorneys Office     Federal Community Defender Office
3 South Penn Square                      Curtis Center, suite 545 West
Philadelphia, PA 19107                601 Walnut Street
(215) 686-5730                         Philadelphia, PA 19106
paul.george@phila.gov               (215) 928-0520
                                  shawn_nolan@fd.org


                                 */s/ Ronald Eisenberg*
                                  RONALD EISENBERG
                                  Office of Attorney General
                                  Philadelphia, PA  19103
                                  reisenberg@attorneygeneral.gov
                                  (267) 940-6676